UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JEROME WILLIAMS,

        Petitioner,

    -v-                                   12-CV-937-JTC

ERIC H. HOLDER, Jr., Attorney General
of the United States;
MICHAEL PHILIPS, Field Office Director
for Detention and Removal, Buffalo Field
Office, Bureau of Immigration and Customs
Enforcement;
DEPARTMENT OF HOMELAND SECURITY;
and
TODD TRYON, Facility Director, Buffalo
Federal Detention Facility,

        Respondents.

---

## **INTRODUCTION**

Petitioner Jerome Williams, an alien under a final order of removal from the United States, has filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 seeking release from detention in the custody of the United States Department of Homeland Security, Immigration and Customs Enforcement (collectively, "DHS"), pending the execution of a final immigration order of removal issued against him. Item 1. As directed by this court's order entered October 15, 2012 (Item 2), respondent[1] has submitted an answer and return (Item 4), along with an accompanying memorandum of law

---

[1] The only proper respondent in this proceeding is Todd Tryon, Assistant Field Office Director, Immigration and Customs Enforcement, Buffalo, New York Office, and Director of the Buffalo Federal Detention Facility, as he is "the person who has custody over [the petitioner]." 28 U.S.C. § 2242; *see also* § 2243 ("The writ, or order to show cause shall be directed to the person having custody of the person detained."); *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004).

(Item 5), in opposition to the petition, and petitioner has submitted a reply (Items 7 and 8). For the reasons that follow, the petition is denied.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Petitioner is a native and citizen of Jamaica. According to DHS records submitted as Exhibit A to the Declaration of Deportation Officer Juanita Payan (Item 4-1), petitioner arrived in the United States at an unknown place and on an unknown date, without being admitted or inspected by an Immigration Officer. *See* Item 4-2, pp. 2, 12.

DHS records also show that, on or about April 23, 2007, petitioner was convicted in Orange County Court, State of New York, of Criminal Possession of Marijuana in the 2nd Degree. He was sentenced to a term of incarceration of 30 months. On or about May 30, 2008, petitioner was convicted in Orange County Court, State of New York, of Criminal Sale of a Controlled Substance (cocaine) and Criminal Possession of a Weapon in the 3rd Degree. He was sentenced to a term of incarceration of 5 years and 3 years post-release supervision. On or about July 2, 2008, petitioner was convicted in Orange County Court, State of New York, of Violation of Probation. He was sentenced to a term of incarceration of 30 months. *See id.* at 6, 13.

On July 29, 2008, while in state custody at the Downstate Correctional Facility in Fishkill, New York, petitioner was encountered by DHS officers assigned to the Criminal Alien Program. *Id.* at 6. Upon verification of petitioner's immigration status, an immigration detainer was lodged against him at the state correctional facility. *Id.*

On September 12, 2008, petitioner was served with a Notice to Appear for removal proceedings before an Immigration Judge, charging him with being subject to removal from

the United States pursuant to Section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States without being admitted or paroled; pursuant to INA § 212(a)(2)(A)(i)(II), as an alien who has been convicted of a controlled substance offense; and, pursuant to INA § 212(a)(2)(C), as an alien who is or has been an illicit trafficker in any controlled substance or who is or has been a knowing assister, abettor, conspirator, or colluder with others in the illicit trafficking in any such controlled substance. *Id.* at 12-14.

On December 22, 2008, Immigration Judge Roger F. Sagerman ordered petitioner to be removed from the United States to Jamaica. *Id.* at 11. Petitioner waived his right to appeal this decision. *Id.* at 7.

On or about March 12, 2012, DHS sent a presentation packet to the Consulate General of Jamaica (the "Consulate") in New York, New York, requesting that a travel document be issued for petitioner's removal. *Id.* at 16, 18. On or about April 2, 2012, upon his release from state custody, petitioner was received into DHS custody and is currently being detained at the Buffalo Federal Detention Facility in Batavia, New York. *Id.* at 7.

On April 5, 2012, petitioner was interviewed by telephone by a Consulate representative. *Id.* at 18. Also on April 5, 2012, DHS served petitioner with a formal Warning for Failure to Depart (Form I-229(a)), along with an instruction sheet listing actions to be completed within 30 days to assist in obtaining a travel document for his removal from the United States. *Id.* at 9-10. The warning form advised petitioner of the provisions of INA § 243, setting forth criminal penalties of fines and/or imprisonment for conniving or conspiring to prevent or hamper his departure from the United States, and also advised

him that, pursuant to INA § 241(a)(1)(C), failure to comply or provide sufficient evidence of his inability to comply, may result in the extension of the removal period and subject him to further detention. *Id.* DHS records indicate that between April 26, 2012 and October 17, 2012, DHS continued to contact the Consulate regarding the status of the request for petitioner's travel document, and that the request remains pending subject to verification of petitioner's identity. *Id.* at 17-18.

On July 2, 2012, petitioner was served with a copy of a written Decision to Continue Detention advising that DHS had conducted a review of petitioner's custody status and concluded that, based on the information in his immigration file (including his criminal history indicating a "wanton disregard for the laws of the United States"), petitioner would continue to be detained because he "pose[d ] a threat to the safety of the community and a risk of flight." *Id.* at 7.

On October 12, 2012, petitioner was served with a subsequent Decision to Continue Detention advising that DHS Headquarters Custody Management Unit ("HQCMU") had conducted a further review of petitioner's custody status, including an in-person interview at the Buffalo Federal Detention Facility on September 27, 2012, and had once again determined to continue petitioner's detention in DHS custody. *Id.* at 2-3. The notice also advised that the request for a travel document submitted on his behalf was currently pending with the Jamaican government, and that his "removal to Jamaica is expected to occur in the reasonably foreseeable future … ." *Id.* at 2.

Meanwhile, petitioner filed this action in federal court on October 4, 2012, seeking habeas corpus relief pursuant to 28 U.S.C. § 2241 on the ground that his continued detention in post-removal order custody is unlawful since it has exceeded the

presumptively reasonable six-month period established under the due process standards set forth by the United States Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001). Upon full consideration of the matters set forth in the submissions on file, and for the reasons that follow, the petition is denied.

## **DISCUSSION**

Petitioner challenges his continued detention by way of habeas corpus review under 28 U.S.C. § 2241, which "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)); *see also Zadvydas*, 533 U.S. at 687 (petition under § 2241 is basic method for statutory and constitutional challenges to detention following order of removal).

The authority to detain aliens after the issuance of a final removal order is set forth in INA § 241(a), which allows the Attorney General to accomplish an alien's removal from the United States within a period of ninety days following the entry of a final order of deportation or removal (the "removal period").[2] *See* INA §§ 241(a)(1)(A)-(B). Detention during the ninety-day removal period is mandatory. *See* INA § 241(a)(2) ("During the removal period, the Attorney General *shall* detain the alien."). The statute also authorizes

---

[2]INA § 241(a)(1)(B) provides:

> The removal period begins on the latest of the following:
> (i) The date the order of removal becomes administratively final.
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

the Attorney General to continue detention of criminal aliens – *i.e.*, aliens ordered removed due to conviction of a crime – beyond the expiration of the ninety-day removal period if it is determined that the alien "is a risk to the community or unlikely to comply with the order of removal …." INA § 241(a)(6).[3]

In *Zadvydas*, the Supreme Court was presented with the challenge of reconciling this apparent authorization of indefinite detention with the Fifth Amendment's prohibition against depriving a person of their liberty without due process. The Court determined that INA § 241(a) authorizes detention after entry of an administratively final order of deportation or removal for a period that is "reasonably necessary" to accomplish the alien's removal from the United States. *Zadvydas*, 533 U.S. at 699-700. Recognizing the practical necessity of setting a "presumptively reasonable" time within which to secure removal, the court adopted a period of six months "for the sake of uniform administration in the federal courts …." *Id.* at 701.

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has

---

[3] INA § 241(a)(6) provides in full as follows:

An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6).

been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.*

To comply with the Supreme Court's ruling in *Zadvydas*, the Attorney General has promulgated regulations providing for review of the custody status of aliens who have been detained for more than six months after the issuance of a final order of removal. Under these regulations, a detainee who has been in post-removal-order custody for more than six months may submit a written request for release to Headquarters Post-order Detention Unit ("HQPDU") setting forth "the basis for the alien's belief that there is no significant likelihood that the alien will be removed in the reasonably foreseeable future to the country to which the alien was ordered removed and there is no third country willing to accept the alien." 8 C.F.R. § 241.13(d)(1). The written request must include "information sufficient to establish his or her compliance with the obligation to effect his or her removal and to cooperate in the process of obtaining necessary travel documents." 8 C.F.R. § 241.13(d)(2).

In reviewing the request for release, the agency is required to consider "all the facts of the case including, but not limited to," the following:

> [T]he history of the alien's efforts to comply with the order of removal, the history of the Service's efforts to remove aliens to the country in question or to third countries, including the ongoing nature of the Service's efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question. Where the Service is continuing its efforts to remove the alien, there is no presumptive period of time within which the alien's removal must be accomplished, but the prospects for the timeliness of removal must be reasonable under the circumstances.

8 C.F.R. § 241.13(f).

If the agency finds that the alien has met the burden of demonstrating good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future, and that there are no special circumstances justifying continued detention, then it must order the detainee released. 8 C.F.R. § 241.13(g)(1). However, the agency may impose certain conditions of release on the alien, such as requiring a bond, attendance in a rehabilitative program, or submission to a medical or psychiatric examination. *See* 8 C.F.R. §§ 241.5(b), 241.13(h)(1); *see also Zadvydas*, 533 U.S. at 695 ("[W]e nowhere deny the right of Congress to remove aliens, to subject them to supervision with conditions when released from detention, or to incarcerate them where appropriate for violations of those conditions.").

As set forth above, in this case petitioner was received into DHS custody on April 2, 2012, upon his release from state custody. *See* Item 4-1, ¶¶ 11, 12. As a criminal alien under a final order of removal, petitioner's detention was mandatory for the ninety-day removal period pursuant to INA § 241(a)(2). Furthermore, upon determining that petitioner posed a significant threat to the safety and security of the community and a risk of flight, DHS was authorized under INA § 241(a)(6) to continue the detention beyond the expiration of the ninety-day period for "a period reasonably necessary to secure removal." *Zadvydas*, 533 U.S. at 699-700.

Under *Zadvydas*, the first six months of detention following a final removal order are "presumptively reasonable." *Zadvydas*, 533 U.S. at 701. Once the six-month period has passed, the burden shifts to the alien detainee to "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* Only

if the alien makes this showing does the burden shift back to the government, which "must respond with evidence sufficient to rebut" the alien's showing that there is no significant likelihood that he or she will be deported in the reasonably foreseeable future. *Id.*; *see also Wang*, 320 F.3d at 146 ("reasonable foreseeability" test of *Zadvydas* "articulates the outer bounds of the Government's ability to detain aliens (other than those serving criminal sentences) without jeopardizing their due process rights.").

Upon review of the submissions on the present petition, the court finds that petitioner has failed to sustain his initial burden under *Zadvydas*. The petition sets forth no factual basis to substantiate petitioner's belief that there is no significant likelihood he can be removed to Jamaica in the reasonably foreseeable future. He simply alleges that the Jamaican Consulate "has not issued travel documents and there is no certainty as to when, if ever, such papers will be issued." Item 1, ¶ 15.

However, as discussed above, the request for a travel document for petitioner remains pending with Jamaican authorities, and DHS records reflect consistent, continuing communications between the Consulate's representatives and DHS staff, with no indication that Jamaican authorities are inclined to deny the request. *See* Item 4-2, pp. 17-18. Furthermore, the available statistical evidence reveals that DHS removes Jamaican citizens to Jamaica on a regular basis,[4] indicating that there are no institutional barriers to petitioner's removal and repatriation. *See* Item 4-1, ¶¶ 18, 19. These circumstances provide a reasonable basis for DHS's expectation that the verification required for the

---

[4] For example, DHS reports show that in fiscal year ("FY") 2009, a total of 1,664 aliens were repatriated to Jamaica; in FY 2010, 1,487 aliens were repatriated to Jamaica; and in FY 2011, 1,474 aliens were repatriated to Jamaica. *See* DHS Yearbook of Immigration Statistics: 2011, Table 41: http://www.dhs.gov/yearbook-immigration-statistics/2011.

issuance of a travel document by the Jamaican government will be accomplished in the reasonably foreseeable future, after which time the necessary travel arrangements may be made for petitioner's release from custody and his repatriation to Jamaica.

Significantly, petitioner has provided no evidence to contradict this expectation, or to otherwise establish compliance with the requirements of the DHS regulations described above. Instead, petitioner relies solely on the fact that his detention has exceeded the presumptively reasonable six-month period established in *Zadvydas*. *See* Item 1, ¶¶ 1, 12-13, 16-21. However, several cases decided within this district have found the habeas petitioner's assertion as to the unforeseeability of removal, supported only by the mere passage of time, insufficient to meet the petitioner's burden to demonstrate no significant likelihood of removal under the Supreme Court's holding in *Zadvydas*. *See, e.g., Khaleque v. Dep't of Homeland Sec.*, 2009 WL 81318, at *4 (W.D.N.Y. Jan. 9, 2009) (petitioner failed to meet initial burden where the only evidence relied upon was the fact that the Consulate had not responded positively to the request for a travel document); *Kassama v. Dep't of Homeland Sec.*, 553 F. Supp. 2d 301, 306-07 (W.D.N.Y. 2008) (petitioner failed to meet initial burden where there was no evidentiary proof in admissible form to suggest that travel documents would not be issued); *Haidara v. Mule*, 2008 WL 2483281, at *3 (W.D.N.Y. June 17, 2008) (petitioner failed to meet initial burden where he "merely ma[de] the general assertion that he will not be returned to [his country] in the foreseeable future."); *Roberts v. Bureau of Immigration & Customs Enforcement*, 2007 WL 781925, at *2 (W.D.N.Y. Mar. 13, 2007) (petitioner who did not present evidence that his country would not provide travel documents did not meet initial burden of proof.); *Singh v. Holmes*, 2004 WL 2280366, at

*5 (W.D.N.Y. Oct. 8, 2004) (petitioner who "failed to submit anything demonstrating that there is no significant likelihood of removal in the reasonably foreseeable future" did not meet initial burden of proof); see also Juma v. Mukasey, 2009 WL 2191247, at *3 (S.D.N.Y. July 23, 2009) (vague, conclusory and general claims that removal is not foreseeable, and that Embassy will not issue travel document in foreseeable future, fails to meet initial burden).

Based on this authority, and upon full consideration of the record presented by way of the parties' submissions, the court finds that petitioner has failed to meet his initial burden under *Zadvydas* to "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future …." *Zadvydas*, 533 U.S. at 701. Accordingly, petitioner has failed to demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States" for the purposes of granting habeas corpus relief under 28 U.S.C. § 2241, and his petition must be denied.

## **CONCLUSION**

For the foregoing reasons, the petition is denied, and the case is dismissed. This dismissal is without prejudice to file another petition should it subsequently appear that removal is no longer reasonably foreseeable. *See Andreenko v. Holder*, 2012 WL 4210286, at *5 (W.D.N.Y. Sept. 18, 2012); *Kassama*, 553 F. Supp. 2d at 307.

It is further ordered that certification pursuant to 28 U.S.C. § 1915(a)(3) be entered stating that any appeal from this Judgment would not be taken in good faith and therefore leave to appeal as a poor person should be denied. *Coppedge v. United States*, 369 U.S. 438 (1962).

The Clerk of the Court is directed to enter judgment in favor of respondent, and to close the case.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated: 3/27/2013
p:\pending\2012\12-937.2241.mar25.2013